Woodworth, J.
It does not appear "that any act has been done by the company since their election of trustees in July, 1818; and the first question is, whether -the corporation "is dissolved, as regards creditors.
The doctrine -laid down in Slee v. Bloom, (19 John. 456,) decides this point. If ,a corporation .suffer acts to be done which destroy the .end ;and object for which-it was instituted, it .is equivalent >-to ;a.surrender -of its rights. It cannot be doubted that.a corporation may be dissolved by such a surrender. This is a .stronger case; for here the trustees do not possess the power to resuscitate the company by a call on the stockholders. Their.shares are paid; and who would become a new subscriber to an insolvent company?[1]
A corporation Buffering stroy its end, ls dissolved,
*391 In Brinckerhoff v. Brown, (7 John. Ch. Rep. 217,) the chancellor observes, “ It does not follow that a is-dissolved, by the sale of its visible and tangible property for the payment of debts, and by the temporary snspension of its business, so long as it has the moral and legal . . . ... .... ... capacity to increase its subscriptions, call m more capital, and resume its--business.” Testing the matter by this .rule, I do not perceive that the corporation possess the moral and *legál -capacity spoken -of. No attempt has been made to revive this company for several years. They have no-capital, nor a prospect of obtaining any. They do not even ¡say they hope or expect to'resume operations.
-¿liter, if it retain the power to resume business-
I am satisfied the event has occurred when the stockholders become liable -to the creditors -of the company.
Stockholders liable.
The Statute (1 R. L. 247,) declares, that for all debts due and owing by the company, at the time of its -dissolution, the persons then composing such company, shall be vidually responsible to the extent of their respective -shares *392 or stock, and no farther. At the time of dissolution, this company were indebted to the respondents, and the appellants became individually responsible in the words of the act. Every stockholder, in a company of this description, incurs the risk of not only losing the amount of stock subscribed, but is also liable for an equal sum, provided the debts due and owing at the time of dissolution, are of such magnitude as to require it.
*391 They ineur. red the riskof stock aa
*392 If the stockholders are also creditors, it presents another question which does not appear to have been considered by the chancellor. The question then is, whether a stockholder, who, in addition to full payment for his stock, has made advances, and thereby become a creditor of the company, can be compelled to pay the same sum to another creditor who prosecutes, (should so much be necessary to satisfy him,) without any allowance or deduction for the stockholder’s individual debt.
Stockholders creditors at the dissolution.
I entertain no doubt, that by a just construction of the act, where there are several creditors, the fund made liable for debts, if insufficient to discharge the whole, should be *392-1 distributed rateably; and the principle that equality is equity, should be applied to such a case. This conclusion, I apprehend, would correspond with the spirit,and intent of the act. It appears to me that a stockholder, who is also a creditor, stands on the same ground, and is entitled to claim under the act, equally as a creditor who is not a stockholder. In the case before us it does not appear that there are any creditors not stockholders, excepting *the respondents. The answer alleges, that several of the appellants are also creditors to a considerable amount, stating in each case the sums due to them respectively, on account of advances made and responsibilities incurred for the company. If these allegations are to be considered as evidence, I think the chancellor’s decision should be considerably modified, so as to allow the respondents to recover such proportion only of their debt, as they shall appear entitled to, on a distribution of the fund rateably among all the creditors. As the pleadings are framed in this cause, although the court may settle the principle that is to govern, they cannot carry it into effect, so far as the appellants, who are stockholders and creditors, are concerned. The cause is not placed in such a state, that a court of equity can award to the stockholders who are creditors, the several proportions of the fund, as against each other, to which they may be entitled. The answer merely states the fact that they are creditors to a certain amount. This, if evidence, is sufficient to enable the court to decide on the extent of the respondent’s recovery, but does not lay the foundation for a decree, that the appellants who are creditors may recover the residue of the fund. In order to bring the whole case before the court, and make a final disposition among all the parties entitled, I apprehend it would be necessary for the appellants to have filed a cross-bill, setting out their claim to the residue of the fund; and then, if the principle of distribution equally among all had been adjudged correct, the court would decree to each and every creditor his rateable proportion.
*392 Act requires a rateable distribution among all the creditors.
*392-1 ahouBut ^ guiarly be on cross'blUi
There appears to be, however, an insuperable barrier in the appellant’s way, to resisting the claim of the respond- *393 The facts upon which that réents &r their whole debt. . sistanoe must rest, are net supported by proof. The cause was put at «issue, but no witnesses were examined by the appellants. The answer alleging that certain of the ap* pelíants were creditors, is not evidence; so that the fact is ¡not before the court. This .allegation in the answer is not responsive to any part of the bill, .and unless it be so, there is no-evidence of a single creditor .other than the respond ents. *The whole of the statement in the answer,,relative t'ie appellants being also creditors, .and the .specification of the sums due to them, is stated by the case to be in re- , . „ - . . , , , . . ply to an interrogatory, requiring them to state whether or not, on the 1st of November, 1818, the -corporation had lost or -expended all its estate, property and effects, of every name and nature, and were then entirely bankrupt. In a previous part of the answer, the appellants admitted that all the real and personal .property of the company had been sold; and that they knew of no other property or effects, excepting two demands against persons who were bankrupts. It will be seen, that the question put had been already substantially answered; but whether so or .not, :the question -whether the -company was insolvent, had no connection with-the question whether the stockholders, or ,some ot' d1QnV‘w‘e-re among the number of creditors. The answer, therefore, sets up distinct matters, not alleged -in, .or .-inquired of, by the bill; .an d if material, ought to be proved.
*392-1 No proof to mta^ciaim “for *393 their whole debt.
Oause was at issue.
fi that^toekhoV ders are creditors not resonsive to the
deuce n0t and should be pro-
I therefore consider the-cause between these parties, as though no suggestion had been made that the appellants were creditors.
It is with 'regret that I arrive at this conclusion; presumin& -as I-do, that the claims by the appellants were.susecptible of proof. If proven, the effect would ,-be to -allow the respondents -a joro raía distribution only, which, according to the vie-w I have takéh, ,-is all they are entitled to .tilaim. But the answer' -not being evidence in this respect, there is nothing before us to show that there -are other ^creditors beside the respondents. If not, they are entitled to be fully paid, if the amount of stock be sufficient.
If proved, the be totaUow°the respondeuts - distoib.utton!*6
*394 The result of my opinion, is, that the decree of the chancellor be affirmed.
Spencer, Senator. On the first point made by the counsel for the appellants, that the company was not dissolved at the time of filing the bill, viz, 7th July, 1819, it has been argued as if the cause had been brought to a hearing ° . on "x'bill and answer, and as if all the allegations of the answer were to be deemed true. But, in fact, there was general replication to the answer, which put it in issue; and, according to the case of Simson v. Hart, (14 John. 63,) in this court, “ matters set up in the answer by way of avoidance, and not necessarily drawn forth by the bill, must, after a general replication, be proved; or the defendant cannot avail himself of them.” We are furnished with no proof in the case, and the facts upon which the appellants rely to show that the company was not dissolved, such as the election of trustees in July, 1818, are not before us.
Being a re. matter^ín ^ voidance, and not responsive should have
The case of Brincherhoff v. Brown (7 John. Oh. Bep. 217,) certainly does warrant the argument, that so long as the stockholders elected trustees, and manifested a design bona fide to continue the company, it should not be deemed dissolved by a surrender;, and that case is clearly tinguishable from Site v. Bloom, in which the defendants admitted the company was dissolved, and abandoned it. I should hesitate in going the length the chancellor appears disposed" to go, in his opinion in this cause, that mere insolvency and inability to continue, should be deemed a surrender. In Brinckerhoff v. Brown, the answer was admitted, because there was no replication filed, and it showed there was not a dissolution. But though the answer is denied in this cause, yet there is sufficient matter admitted by it to show a dissolution, if it be considered without reference to the facts averred, but not proved. There is, therefore, no ground furnished for reversing the decree on that point.
Whether mere c”pora-
But answer to make^uf a dissolution,
On the second point, that the individual corporators are uot liable beyond the amount already paid in by them to the *395 comPan7i even if it be deemed dissolved, it cannot be tie* cessary to spend much time. The stock subscribed and agreed to be paid into the company, became corporate property: and when paid in, might be reached by ordinary be-proceedings; and if not paid, in, a court of equity would comPel the trustees to collect and apply it to the payment *of debts. (Salmon v. The Hamborough Company, 1 Cas. Ch. 204; 1 Kyd. on Corp. 273, S. C.) The same prin* eiple was acted upon in the case of She v. Bloom, in which stockholders was required, in the first instance, to pay up the amount of their subscriptions, for the benefit of the creditors. This, being corporate property, is a fund for the benefit of creditors, existing entirely independent of any statutory provision. Then comes the act, (1 R. L. 247,) which declares, that in the event of a dissolution, the stockholders at the time “shall be liable to the extent of their respective shares of stock held in such company, arid no further.” Surely the legislature did not mean to declare, that the stockholders should be liable, as they had already agreed to be liable, and as they were liable at common law. Something more was intended; and it is to my mind very clearly expressed, that the extent of the stock held by them should be the measure of their individual liability to creditors. The statute does not refer to them in their corporate capacity, but as individual stockholders; and it declares their liability, without reference to the amount they may have paid in on their stock.
*394 corporators ™ ^bie to *395 their stock, they have paM in-
Were liable subscribed°Uat common law; would enforce t^etr^^®otion
On the point, that judgment of ouster, or some judgment directly against the corporation, should be pronounced before it should be deemed dissolved, I entirely concur in the opinion of the chancellor; and should only weaken the ground by attempting to add to his reasons. And on the point, that the remedy is at law, I also think the chancel-l°r>s answer conclusive, that the very principle of contrribution by different and numerous parties, gives equity jurisdiction.
Judgment of n^ceSary ’n0t
nyC°numerous parties gives diction.
Another point has been incidentally urged in argument, that many of the appellants are themselves creditors, and-equally entitled with the respondents to be paid. The *396 decree directs the master to deduct from the amounts to be paid by the appellants respectively, such sums as paid for the debts of the company, since its dissolution. I confess I can see no reason why the credit for sums advanced by the appellants, should be restricted to a period since the dissolution of the company. The members of *the company might bona fide advance money, as they allege they have done, to carry on the business of the corporation, and they are equally entitled with any other creditors, to be indemnified from the funds of the company, or from the individual liability of the stockholders. As the respondents have not obtained any judgment and execution at law, they have not acquired any priority to other creditors. Those appellants who have made advances, are clearly entitled to have those advances considered as payments, on account of their individual liability, until the other stockholders have paid equivalent sums; or, what would amount to the same thing, their advances may be consolidated with that of the respondents, to ascertain the amount to be apportioned among the stockholders. Although in this respect the decree is objectionable, yet as it is merely interlocutory, and a final decree must be had on the coming in of the master’s report, an opportunity will then be given to correct it. It does not, in itself, afford ground for a reversal of the whole decree.
*395 The stock holders should their *396 whether be* j”®ol^onafteI
I am of opinion, therefore, that the decree of the court of chancery, be affirmed.
The Gourt unanimously directed the following decree, which was entered:
“ This cause having been heard, &c., it is ordered, adjudged and decreed, that the decree of the court of Chancery be, in all things, affirmed, excepting the part thereof which directs the master as to the allowances to be made to the defendants below, for payments made by them since the dissolution of the company; and that the said decree be affirmed without prejudice to the appellants, to claim hereafter payment for any advances made by them at any time, for the company; and that the appellants pay the *397 respondents their costs to- be taxed; and that-the. proceedings be remitted to the court of chancery, &c.”

 It -is the -neglect.of the corporate duties, or the .abuse of them ; -or in *391 other words, the failure to live up to the fundamental law of their being, which the law regards as sufficient cause'for extinguishing the existence of corporations. The State v. The Real Estate Bank, 5 Ark. Rep. 595.
The primary object of proceeding in chancery against failing corporations, is not for the .purpose of dissolving the corporation,-but to protect.the assets for the-benefit of creditors. The power--to decree a dissolution of the corporation is merely incidental. Fay v. Erie and Kalamazoo Railroad Bank, Harrington’s Ch. Rep. 194.
In the state -of Hew York, whenever any corporation other than those which are.excepted from the operation of the article of the revised statutes, relative -to proceedings against corporations in equity, has remained insolvent .for.ayear, or has suspended its ordinary business, or has neglected to pay its ordinary and undisputed evidences of debt, for a year, any of its creditors or stockholders, who have an interest in closing up its affairs, may file a bill in -chancery, against such corporation to have its dissolution judicially declared, ,and to have Its concerns closed up, and its property distributed under the direction of the court. Mickles v. The Rochester City Bank, 11 Paige, 118.
Upon a bill filed in the court of .chancery against a corporation, to declare •its dissolution under the thirty-eighth section of the article of the New York ’revised -statutes, -relative to proceedings against corporations in equity, the .complainant may-apply "for an injunction to restrain creditors from proceeding, at law to obtain satisfaction of their debts, and to allow them to come in and make-themselves parties to bis suit. Ib.
The corporation is a necessary jparty .to a bill in chancery to declare the dissolution of such corporation, and to have its property .and effects distributed among its creditors and stockholders. Ib.
*392 But where the property of a manufacturing corporation is ail exhausted, and a bill is filed for the sole purpose of compelling its stockholders to pay the corporate debts out of their individual property, it seems that the corporation is not a necessary party to such a bill, although its dissolution has "not been judicially declared. Ib.
It seems that in the state of New York, although a corporation is deemed to have surrendered its character in consequence of non-user, as declared in the thirty-eighth section of the article of the revised statutes relative to proceedings against corporations in equity, the corporation is not actually dissolved before proceedings have been instituted, either at law or in equity, to have such dissolution judicially declared. And a judgment recovered against such corporation, before the institution of such proceedings, and a sale of the corporate property upon an execution issued upon such judgment, will be valid and effectual to transfer the title of such property to the purchaser. Mickles v. The Rochester City Bank, 11 Paige, 118.
A corporation, by non-user and the suspension of its ordinary business, or by continued insolvency, or the non-payment of its notes and other evidences of debt, for one. whole year, does not become ipso facto dissolved. But the corporation continues to exist until its dissolution is judicially declared by a decree of the court of chancery, or by the judgment of the supreme court upon a quo warranto. Ib. American Chancery Digest, vol. 1, p. 400, Nos. 186 to 193, inclusive,