(Nos. 16573-16574.—Appellate Court reversed; superior court affirmed.)

JOSEPH T. RYERSON & SON, Plaintiff in Error, *vs.* THOMAS J. PEDEN, Defendant in Error.—JOSEPH T. RYERSON & SON, Plaintiff in Error, *vs.* ANDREW H. HANSEN, Defendant in Error.

*Opinion filed June 18, 1925—Rehearing denied October 8, 1925.*

1. BANKRUPTCY—*general rule as to when interest is allowed.* The allowance of a claim in a bankruptcy case is the rendition of a judgment, and the amount of said judgment, and interest thereon, constitute the bankrupt's debt; but in the distribution of assets, for reasons of convenience and public policy, where the assets are not sufficient to pay all the debts, the basis for distribution is not the amount of the debt but the amount of the judgment, without interest, and where the assets are sufficient, then the entire debt,—*i. e.,* principal and interest,—is paid.

2. CORPORATIONS—*when interest is allowed against stockholders from date of allowance in bankruptcy.*  In an action by a creditor

to enforce the liability of stockholders for unpaid portions of capital stock, due to a fraudulent over-valuation of property turned in as payment, interest may be allowed on the creditor's claim from the date of its allowance in the bankruptcy proceeding of the corporation, as the creditor has, as a'gainst a stockholder, the same right to recover interest which, according to the nature of the contract or debt, he would have against the corporation, but not in excess of the stockholders' maximum liability as fixed by statute.

WRITS OF ERROR to the Third Division of the Appellate Court for the First District;—heard in that court on appeals from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

ERIC WINTERS, for plaintiff in error.

THOMAS J. PEDEN, *pro se,* and ROY C. MERRICK, for defendants in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiff in error, (hereinafter called the complainant,) a creditor of the South Chicago Architectural Iron Works, afterwards re-organized as the Illinois Architectural Iron Works, filed its bill in equity in the superior court of Cook county against said company and all its stockholders, including the defendants in error, Thomas J. Peden and Andrew H. Hansen, charging the insolvency and bankruptcy of the company and that the company ceased doing business leaving debts unpaid; that the stockholders of the company, while acting as directors, had accepted from themselves, in full payment of their subscriptions for stock, property which was of far less value than the par value of the stock for which they had subscribed, and therefore, under the provisions of the Illinois Corporation act, the company and its stockholders were liable for the debt due complainant. Answers were filed and a hearing was had in the superior court, which resulted in a finding for defendants in error on the ground that the right of action against the

stockholders on account of any alleged over-valuation of the property given in payment of subscriptions to stock passed to and was vested in the trustee in bankruptcy and not in the creditor, and a decree was entered accordingly. On appeal to the Appellate Court the decree of the superior court was affirmed, but upon appeal from that court to this court it was reversed. (*Ryerson & Son* v. *Peden,* 303 Ill. 171.) This court held that where a corporation is re-organized into a new company, the property of the old company being turned over to the new in full payment of subscriptions to the capital stock of the new company, the liability of the stockholders because of the over-valuation of the property may be enforced directly by creditors after the failure of the corporation, and the right to enforce such liability is not an asset of the corporation to be turned over to the trustee in bankruptcy. (*Ryerson & Son* v. *Peden, supra.*) After the case had been remanded to the superior court of Cook county the cause came on for final hearing upon the report of the master in chancery who had taken the proofs and made his findings thereon, and exceptions thereto, and a decree was entered finding that on or about April 3, 1913, the Illinois Architectural Iron Works ceased doing business leaving debts unpaid, and a petition was filed in the United States district court for the northern district of Illinois to have it adjudged a bankrupt; that said petition was granted and Daniel P. Trude was elected trustee of the bankrupt's estate; that the complainant was a creditor of the defendant corporation and filed a claim against it for $7222.44, which claim was allowed on July 15, 1914; that on July 20, 1914, a dividend was paid to complainant of $1444.49 and on November 27, 1914, a final dividend of $975.03; that the estate of the bankrupt was exhausted and nothing has been paid since upon the indebtedness; that there was due and owing to the complainant on March 17, 1919, (the date of the making of the report by the master in chancery,) a balance of $4802.92, with interest at the

rate of five per cent per annum from July 15, 1914, to
March 17, 1919, amounting to $1115.08, making the total
amount due and owing to the complainant by the corpora-
tion on March 17, 1919, $5918, upon which amount the
complainant is entitled to interest at five per cent from
March 17, 1919, to date, said interest being $1209.33, the
total amount of principal and interest at the date of the
decree being $7127.33; that the master in chancery is en-
titled to a fee of $500, for which the defendant stockhold-
ers are liable and which was paid to him on March 17,
1919, one-half by the complainant and the other one-half
by the defendants, and that the complainant is entitled to
recover from the defendants $250 so paid by it, and inter-
est at the rate of five per cent per annum thereon from the
date of the master's report to date, said interest being $53,
making the total amount due $303; that the total of the
amount so due and owing to the complainant is $7430.33;
that each of the defendant stockholders, Thomas J. Pe-
den, Leah E. Peden, Christine Hansen, Andrew H. Han-
sen, F. W. Garbe and Albert Rentner, is liable for his and
her *pro rata* share of such amount and the costs of this
proceeding, to the extent of the unpaid portion of the stock
held by each of them, and that an assessment of thirty-
one and three-fourths per cent should be made against
said stockholders upon the amount of their liability. The
*pro rata* assessment of Thomas J. Peden was fixed by the
decree at $995.83 and the assessment of Andrew H. Han-
sen at $2987.50, which assessments those defendants were
ordered to pay, with interest thereon from the time of the
decree at five per cent per annum. From this decree Peden
and Hansen severally appealed to the Appellate Court for
the First District, which court held that the complainant
was not entitled to recover interest prior to the rendition of
the decree and reversed the decree and remanded the cause
to the superior court, with directions to enter a decree fix-
ing the amount due the complainant at $4802.42 and the

sum of $250, (the amount of master's fees advanced by the complainant,) making a total principal sum of $5052.42, together with interest thereon at five per cent per annum from May 7, 1923, the date of the entry of the decree. The two causes are now before this court upon separate writs of *certiorari.*

The Appellate Court held that interest could be allowed only from the time when the stockholders' liability was determined, and that this liability was not determined until the final decree, and this holding is assigned as error. The complainant claims, on the other hand, that the superior court was right in allowing interest from the date when its claim was allowed in the bankruptcy court.

Section 3 of chapter 74 of our statutes provides that "judgments recovered before any court or magistrate shall draw interest at the rate of five (5) percentum per annum from the date of the same until satisfied. When judgment is entered upon any award, report or verdict, interest shall be computed at the rate aforesaid, from the time when made or rendered to the time of rendering judgment upon the same, and made a part of the judgment." (Smith's Stat. 1923, p. 1224.) The holding of the Appellate Court is based upon a supposed rule that in bankruptcy a claim draws no interest after it is allowed. This, however, is not a correct statement of the rule. The rule with reference to the allowance of interest in insolvency and bankruptcy cases, and the reasons for the rule, are well stated in *American Iron and Steel Manf. Co.* v. *Seaboard Air Line Railway Co.* 233 U. S. 261, as follows: "And it is true, as held in *Tredegar Co.* v. *Seaboard Air Line Railway Co.* 105 C. C. A. 501, 183 Fed. 290, that as a general rule, after property of an insolvent is in *custodia legis,* interest thereafter accruing is not allowed on debts payable out of the fund realized by a sale of the property. But that is not because the claims had lost their interest-bearing quality during that period but is a necessary and enforced rule of

distribution, due to the fact that in case of receiverships the assets are generally insufficient to pay debts in full. If all claims were of equal dignity and all bore the same rate of interest from the date of the receivership to the date of final distribution, it would be immaterial whether the dividend was calculated on the basis of the principal alone or of principal and interest combined. But some of the debts might carry a high rate and some a low rate, and hence inequality would result in the payment of interest which accrued during the delay incident to collecting and distributing the funds. As this delay was the act of the law, no one should thereby gain an advantage or suffer a loss. For that and like reasons, in case funds are not sufficient to pay claims of equal dignity, the distribution is made only on the basis of the principal of the debt. But that rule did not prevent the running of interest during the receivership, and if, as a result of good fortune or good management, the estate proved sufficient to discharge the claims in full, interest as well as principal should be paid. Even in bankruptcy, and in the face of the argument that the debtor's liability on the debt and its incidents terminated at the date of adjudication and as a fixed liability was transferred to the fund, it has been held, in the rare instances where the assets ultimately proved sufficient for the purpose, that creditors were entitled to interest accruing after adjudication. (2 Black. Com. 488; cf. *Johnson* v. *Norris,* L. R. A. 1915B, 884, 111 C. C. A. 291, 190 Fed. 460-5.) The principle is not limited to cases of technical bankruptcy, where the assets ultimately prove sufficient to pay all debts in full, but principal, as well as interest accruing during a receivership, is paid on debts of the highest dignity, even though what remains is not sufficient to pay claims of a lower rank in full. *Central Trust Co.* v. *Condon,* 14 C. C. A. 314, 31 U. S. App. 387, 67 Fed. 84; *Richmond & I. Construction Co.* v. *Richmond, N. I. & B. R. R. Co.* 34 L. R. A. 625, 15 C. C. A. 289, 31 U. S. App.

704, 68 Fed. 116; *First Nat. Bank* v. *Ewing,* 43 C. C. A. 150, 103 Fed. 190."

In *Johnson* v. *Norris,* 111 C. C. A. 291, it was held that where there is a surplus of a voluntary bankrupt's estate after the payment of all proven claims and interest thereon to the date of the filing of the petition, such surplus should be applied first to the payment of the interest accruing on the claims subsequently to the filing of the petition, and the remainder, only, returned to the bankrupt. In *In re Osborn's Sons & Co.* 100 C. C. A. 392, it was held that allowed claims in bankruptcy are to be treated as judgments and bear interest from maturity, although the contracts do not provide therefor. In L. R. A. 1915B, 884, and 29 L. R. A. (N. S.) 887, the rule is stated that where the bankrupt's estate is sufficient, interest will be paid on all allowed claims from the date of the adjudication, but that when the assets are insufficient to satisfy the principal of claims asserted, interest will not be allowed in the settlement of the bankrupt's estate, the basis of the rule in each case being the reasons given in *American Iron and Steel Manf. Co.* v. *Seaboard Air Line Railway Co. supra.*

From a resume of the authorities it is evident that the allowance of a claim in a bankruptcy case is the rendition of a judgment, and that after the rendition of such judgment the bankrupt's debt consists of the amount of the judgment and interest thereon, and that in the distribution of assets, for reasons of convenience and public policy, where the assets are not sufficient to pay all the debts of the bankrupt the basis for distribution is not the amount of the debt but is the amount of the judgment, without interest, and that where the assets are sufficient, then the entire debt,—*i. e.,* principal and interest,—is paid.

The question involved in this suit has never been before this court. Defendants cite *Parmalee* v. *Price,* 208 Ill. 544, and *Munger* v. *Jacobson,* 99 id. 349, as authorities upon this proposition. Neither of those cases has any application

to the question here involved. *Munger* v. *Jacobson* held that interest was not recoverable in an action against a stockholder to enforce his liability to creditors of the corporation for double the amount of his stock where the debts of the corporation exceeded the total of the assets and all the stock liabilities, so that the whole of the defendant's liability was needed for the payment of the debt. The question there involved was whether interest was recoverable on the amount of the stockholder's liability, and not whether interest on the amount of the claim allowed in the bankruptcy case was a part of the debt of the corporation. In *Parmalee* v. *Price* it was held that when a stock subscription is paid by fraudulently over-valuing property, the right of action in favor of a creditor of a corporation against a stockholder accrues whenever the corporation ceases doing business leaving debts unpaid, and that the creditor might enforce such right of action in equity without a judgment at law. In that case no question of interest was involved. In 19 L. R. A. (N. S.) 428, the rule is laid down that where the statutory liability of the stockholders of a corporation is for its contracts, debts and engagements to a certain limit, a creditor has, as against a stockholder, the same right to recover interest which, according to the nature of the contract or debt, would exist against the corporation itself as it would were the action against the corporation,—not, however, in excess of the stockholder's maximum liability as fixed by the statute. The authorities cited as the basis of this rule are *Richmond* v. *Irons,* 121 U. S. 27; *Chemical Nat. Bank* v. *Armstrong,* 28 L. R. A. 231; *In re Warren,* 52 Mich. 557; *Zang* v. *Wyant,* 25 Colo. 551; *Wheeler* v. *Millar,* 90 N. Y. 353; *Haslett* v. *Wotherspoon,* 1 Strobh. Eq. 209; *Cumberland Lumber Co.* v. *Clinton Hill Lumber Co.* 54 Atl. 452; *Grund* v. *Tucker,* 5 Kan. 70; *Wells Fargo & Co.* v. *Enright,* 127 Cal. 669; *Knolls* v. *Sandersock,* 107 Cal. 629. The rule as thus laid down was the rule adopted by the superior court as the basis of its decision

in the case before it. By the decree the liability of Thomas J. Peden was fixed at $3186.66 and the liability of Andrew H. Hansen was fixed at $9560. No interest was allowed upon these amounts. The interest which was allowed was upon the judgment of the United States district court for the northern district of Illinois in favor of the complainant against the corporation,—*i. e.*, upon the indebtedness of the corporation to the complainant from the time of the rendition of such judgment to the date of the master's report and upon the amount found due by the report of the master in chancery from the date of the filing of such report. The statute in force at the time when the liability in question arose and when the master's report was made, provided: "If any corporation * * * shall * * * cease doing business, leaving debts unpaid, suits in equity may be brought against all persons who were stockholders at the time * * * by joining the corporation in such suit; and each stockholder may be required to pay his *pro rata* share of such debts or liabilities to the extent of the unpaid portion of his stock, after exhausting the assets of such corporation." (Hurd's Stat. 1917, sec. 25, p. 703.) The rule adopted by the superior court was the proper one under the evidence in this case.

Cross-error has been assigned by the defendants that the Appellate Court erred in holding that they were liable as stockholders upon any shares of the stock of the Illinois Architectural Iron Works issued in the name of Albert Rentner, as treasurer and trustee. This question was decided by this court in the case of *Ryerson & Son* v. *Peden, supra.*

The decree of the superior court being in accordance with the rules of law applicable thereto, the judgments of the Appellate Court are reversed and the decree of the superior court is affirmed.

> *Judgments of Appellate Court reversed.*
> *Decree of superior court affirmed.*